# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JOSE M. VIGOA PEREZ, | |
| Plaintiff, | 3:15-cv-00065-RCJ-WGC |
| vs. | **ORDER** |
| JAMES GREGORY COX et al., | |
| Defendants. | |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), submitted a civil rights complaint under 42 U.S.C. § 1983, filed an application to proceed *in forma pauperis*, and filed a motion for appointment of counsel. (ECF No. 1). The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

**I.   SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any civil case "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). In addition to screening requirements under § 1915A, under the Prison Litigation Reform Act, the court must dismiss the case if "the allegation of poverty is untrue" or

if the court determines the action "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2).

Dismissal for failure to state a claim under § 1915A incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). To survive § 1915A review, a complaint must "contain sufficient factual matter, accpeated as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court liberally construes *pro se* civil rights complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies could not be cured through amendment, a *pro se* plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).

## II. SCREENING OF COMPLAINT

Plaintiff brings a complaint under 42 U.S.C. § 1983, asserting claims for violation of the Fourteenth Amendment Equal Protection Clause (count one) against Defendants James Gregory Cox, Harold Mike Byrne, and Renee Baker and for violation of the Fourteenth Amendment Due Process Clause (count two) against Defendant Dwayne Deal. (Compl. 5–8, ECF No. 1-1). Plaintiff seeks monetary relief. (*Id.* at 12).

**A. Count One**

Plaintiff alleges that from August 24, 2002 to October 22, 2003 he was housed as a "high risk potential" inmate at the Ely State Prison ("ESP"). (*Id.* at 5). Plaintiff alleges this is the most restrictive status and is reserved for inmates with serious NDOC violations. (*Id.*). According to Plaintiff, he was classified as a "high risk potential" inmate due to his "convictions['] notoriety" and his attempted escape from the Clark County Detention Center. (*Id.*). However, Plaintiff contends that he has not committed any NDOC violations. (*Id.*).

Plaintiff alleges that on October 24, 2003, he was no longer deemed a safety concern and therefore was reclassified as an "administrative segregation" inmate. (*Id.*). Plaintiff alleges that on October 24, 2004, he was reclassified as a "general population/close custody" inmate. (*Id.*). Plaintiff further alleges that on November 17, 2005, he once again was reclassified as "general population/close custody" because ESP did not have the security to hold him, which was later determined by the NDOC Central Office "to be inaccurate." (*Id.* at 6).

Plaintiff alleges that in August 2012, he began to seek a transfer from ESP to another institution under NDOC Regulation 521.03. (*Id.*). According to Plaintiff, during a full classification review, Defendant Harold Byrne, who is the Associate Warden, "outlined a list of stipulations for Plaintiff to complete in order to effectuate that transfer." (*Id.* at 2, 6). The

requirements allegedly were that Plaintiff "remain disciplinary free; continue exemplary behavior; maintain a cell mate; and complete all Department Anger Management Courses, enroll in Education Programs, and obtain High School Diploma." (*Id.* at 6).  Plaintiff contends that Defendants James Gregory Cox, the Director of Prisons, and Renee Baker, the Warden, also stipulated to these requirements. (*Id.* at 2, 6).

Plaintiff contends that he has fulfilled all these requirements, but that he remains incarcerated at ESP. (*Id.* at 6).  Plaintiff further contends that no other former "high risk potential" inmate at ESP was required to comply with the same requirements to effectuate a transfer and that these requirements are not part of NDOC's regulations. (*Id.*).  According to Plaintiff, numerous other similarly situated former "high risk potential inmates have been transferred out of Ely State Prison." (*Id.*).  Plaintiff alleges that the failure to transfer him violates the Fourteenth Amendment's Equal Protection Clause. (*Id.* at 5–6).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "To state a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation omitted).  The first step in determining whether officers violated a prisoner's right to equal protection is "to identify the relevant class to which he belonged." *Id.*  "The groups must be comprised of similarly situated person so that the factor motivating the alleged discrimination can be

4

identified." *Id.* (quotation omitted). "An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." *Id.* at 1031 (quotation omitted).

Here, Plaintiff fails to plead facts sufficient to support his equal protection claim that he was treated differently from other prisoners with respect to transfers. Plaintiff does not allege that he is the member of any protected class or that others not of his class were given better treatment in regards to transfer preferences. Moreover, Plaintiff does not claim that Defendants acted with any intent or purpose to discriminate against him. It is far more plausible that Plaintiff has not been transferred due to limited availability in other correctional facilities or for some other legitimate reason. The fact that other prisoners may have received better treatment than Plaintiff with respect to transfers is insufficient to support an equal protection claim. *Furnace*, 705 F.3d at 1031.

Indeed, decisions to transfer or not transfer a prisoner to a different facility or cell rarely support an equal protection claim. *See Walker v. Beard*, --- F.3d ---, 2015 WL 3773072, at *7–*8 (9th Cir. June 18, 2015) (denying equal protection claim by prisoner who sought transfer for religious reasons); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (stating that "Plaintiff's assertion that his transfer would violate his . . . equal protection rights has no basis in law"); *Duncan v. Madigan*, 278 F.2d 695, 696 (9th Cir. 1960) (finding that the plaintiff's contention that "his transfer denied him equal protection of the law" was "without basis" and had "no merit"). The Court finds that amendment would be futile and dismisses the claim with prejudice.

**B. Count Two**

Plaintiff alleges that on December 24, 2013, he was advised that because he had completed all of the requirements, a full classification hearing would be scheduled regarding his

5

1  transfer. (Compl. 7).  However, Plaintiff alleges that in January 2014, he was advised that

2  Defendant Dwayne Deal, of the NDOC's Offender Management Division, denied Plaintiff's

3  transfer request without giving a reason. (*Id.*).  Plaintiff contends that a former ESP case worker

4  told Plaintiff that Plaintiff was not labeled an escape risk or a threat to the safety or security of

5  the prison, which is why he was removed from "high risk potential" status on two occasions, but

6  that Plaintiff had "strong leadership abilities" and was a "concern" to the prison. (*Id.*).  Plaintiff

7  further contends he never received a classification hearing or any form of notice regarding his

8  new status of being a "leader." (*Id.*).  According to Plaintiff, the fact he is considered to be a

9  "leader" is why he remains classified as a "general population/close custody" inmate. (*Id.*).

10         Plaintiff alleges the only reasons for denying his transfer is the nature of his original

11 sentence and not his conduct and attitude since he has been incarcerated, which have improved.

12 (*Id.* at 8).  Plaintiff further alleges there is no justification for holding him in hard conditions,

13 which include twenty-three hour lockdown, restricted privileges, no job opportunities, and no

14 access to the gym, chapel, culinary facilities, main yard, tier, or law library. (*Id.*).  Plaintiff

15 contends that Defendant Dwayne Deal's review and denial of his transfer request, without giving

16 Plaintiff "an opportunity to test the purported basis for his continued confinement to close

17 custody" violated Plaintiff's Fourteen Amendment due process rights. (*Id.*).

18         Under the Due Process Clause of the Fourteenth Amendment, the Government cannot

19 deprive a person of "life, liberty, or property" without due process of law. U.S. Const. Amend.

20 XIV.  A due process claim exists "only when a constitutionally protected liberty or property

21 interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).  Prisoners do not have a

22 liberty interest in being incarcerated at a particular correctional facility or being transferred from

23 one facility to another. *Olm v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427

24

U.S. 215, 225–27 (1976). Nor do prisoners have a liberty interest in their classification status. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). This is because "prison officials should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (quotation omitted).

Given that prisoners have no liberty interest in being transferred to another prison, Plaintiff's due process claim based on Defendant Dwayne Deal's denial of his transfer request fails as a matter of law, and amendment would be futile. To the extent Plaintiff's due process claim is based on his classification status, Plaintiff also does not have a liberty interest in his classification status. The Court therefore will dismiss count two with prejudice.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Fourteenth Amendment equal protection and due process claims are DISMISSED with prejudice, as amendment would be futile. The Clerk is ordered to close this case.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Proceed *in forma pauperis* (ECF No. 1) is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Motion for Counsel (ECF No. 1-3) is DENIED as moot.

IT IS SO ORDERED.

Dated: June 30, 2015

_____
ROBERT C. JONES
United States District Judge